*378
 
 MICHAEL E. KIRBY, Judge.
 

 | ] This matter arises from a dispute between the owner/lessor and former tenant/lessees of part of a commercial building
 
 [1]
 
 that flooded during Hurricane Katrina. The owner/lessor, C.G.I. Holdings, L.L.C. (“C.G.I.”), appeals a trial court judgment in favor of the tenant/lessees, Café LeBlane, and Robin and Andre LeBlane (“the LeBlancs”), awarding them damages of fifty thousand dollars ($50,000.00), plus judicial interest and costs, for the loss of their movable property. For the reasons that follow, we reverse.
 

 In 1989, the LeBlancs opened Café Le-Blanc, a restaurant in St. Bernard Parish, located in the commercial building at issue. On August 29, 2005, Hurricane Katrina made landfall just south of New Orleans. A breach at the Industrial Canal levee and the overtopping of the Mississippi River Gulf Outlet levee caused widespread flooding throughout St. Bernard Parish. The interior of the restaurant sustained seven (7) feet of water.
 

 li>Two weeks after the storm, the Le-Blancs contacted Keith Collura, a partner in C.G.I., to inform him that they were in Houston, Texas. Mr. Collura told the Le-Blancs that he had returned to St. Bernard Parish on September 10, 2005, to view the devastation. He explained that he did not have a key to access the restaurant, but by looking through the windows, it appeared to him that the restaurant was completely destroyed. Before ending their conversation, the LeBlancs authorized Mr. Collura to enter the restaurant to inspect the damage if he returned again.
 

 In early October 2005, Mr. Collura and Pat Perez, another C.G.I. partner, returned to St. Bernard Parish to begin cleaning their homes and commercial properties, including 1010 East Judge Perez Drive. They cleaned, gutted and removed debris from Café LeBlane. They placed the commercial restaurant equipment, including refrigerators, freezers, fryers, ovens, sinks, drink machines and an ice machine, outside the building.
 

 While still in Houston, Mr. LeBlane received a phone call from a friend who informed him that the restaurant equipment was on the side of the road. The LeBlancs returned to St. Bernard Parish on October 9, 2005, and discovered Café LeBlane had been cleaned and the restaurant equipment discarded onto the street outside the premises. Upon closer inspection, the LeBlancs realized many of the pots, pans, utensils, dishes, and smaller appliances were missing. The following week, the LeBlancs presented Mr. Collura with a letter from their attorney demanding that C.G.I. and its partners cease all activity at the leased premises until |sthe LeBlancs had the opportunity to assess their damages. On March 9, 2006, the LeBlancs filed their petition for damages, alleging that C.G.I. wrongfully evicted Café LeBlane from the premises and discarded their movable property without permission.
 

 Prior to trial, the LeBlancs stipulated that their claim had a value of no more than fifty thousand dollars ($50,000.00); thus, the matter was tried by the judge without a jury. See. La.Code Civ. Proc. art. 1732. At trial, the LeBlancs testified that although they had authorized C.G.I., through Mr. Collura, to enter the restaurant, they never authorized him to clean
 
 *379
 
 and gut their leased space or to remove and discard their movable property before they could assess their damages. They testified that C.G.I. never gave them notice that it intended to remove their property in conjunction with the cleanup. On the other hand, Mr. Collura and Mr. Perez claimed that the LeBlanes had authorized them to enter the restaurant and remove their property to facilitate the cleanup. They claimed that Mr. LeBlanc told them that he and Mrs. LeBlanc had no intention of ever returning to live in St. Bernard Parish.
 

 Following trial, the trial court rendered judgment in favor of Café LeBlanc and the LeBlanes, finding that C.G.I. evicted them while Executive Orders KBB 2005-32, KBB 2005-48 and KBB 2005-67, which temporarily prohibited evictions after the storm, were still in effect. The trial court concluded that C.G.I. failed to afford the LeBlanes due process regarding the eviction. In reasons for judgment, |4the trial judge emphasized that he found the Le-Blancs’ testimony to be much more credible than that of the C.G.I. partners.
 

 On appeal, C.G.I. argues that the trial court erred in finding that it wrongfully evicted Café LeBlanc and the LeBlanes from the premises. We agree.
 

 Louisiana Civil Code article 2668 provides, in part, “Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.”
 

 The lessor’s principal obligations are set forth in La. Civ.Code art. 2682, which states, “The lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee’s peaceful possession for the duration of the lease.”
 

 The lessee’s principal obligations are set forth in La. Civ.Code art. 2683, which states, “The lessee is bound: (1) To pay the rent in accordance with the agreed terms; (2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and (3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.”
 

 If a lessee fails to pay the rent in the amount and manner agreed upon, a lessor may dissolve the lease and regain possession in the manner provided by law. See La. Civ.Code art. 2704.
 

 |fi“If the leased thing is lost or totally destroyed, without the fault of either party, or if it is expropriated, the lease terminates and neither party owes damages to the other.” La. Civ.Code art. 2714.
 

 Furthermore, the written lease between C.G.I. and Café LeBlanc, provided, at lines 23-25:
 

 Should the property be destroyed or materially damaged so as to render it wholly unfit for occupancy by fire or other unforeseen event not due to any fault or neglect of Lessee then Lessee shall be entitled to a credit for the unexpired term of the lease and any unma-tured rent notes shall be cancelled.
 

 The appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.
 
 Driscoll v. Stucker,
 
 2004-0589, p. 17 (La.1/19/05), 893 So.2d 32, 46.
 

 Upon review, we find the overwhelming evidence in the record, particularly the
 
 *380
 
 photographs, indicates that the extensive water damage to the interior of the commercial building rendered the premises uninhabitable and unsuitable for operating a restaurant. Even accepting as true the LeBlancs’ claim that they never authorized C.G.I. to remove their movables from the premises, Executive Order KBB 05-67 did not prohibit an owner of immovable property from entering the lease property to make necessary repairs.
 
 [2]
 
 It is undisputed that the restaurant | fiequipment and other movables had to be removed to remediate the environmental hazards and repair the premises. Because C.G.I. was without fault in causing the damage to Café Le-Blanc, and the LeBlancs never paid rent after the month of August 2005, we find the trial court erred in concluding that an eviction occurred and in awarding the Le-Blancs damages.
 

 Accordingly, for the above reasons, the judgment of the trial court is reversed.
 

 REVERSED.
 

 [1]
 

 . The commercial building, located at 1010 East Judge Perez Drive, Chalmette, Louisiana, has a total area of 12,000 square feet. In August 2005, three tenants, a restaurant, a dancing school and a bingo hall, leased space in the building. The plaintiff herein, Café LeBlane, Inc. ("Café LeBlane”), occupied 2,400 square feet pursuant to a written lease.
 

 [2]
 

 . Executive Order KBB 05-67, Section 1 E, provides:
 

 Nothing in Subsection C of this Section [regarding the suspension of legal deadlines] shall prohibit an owner of immovable properly from reclaiming leased property if abandoned as provided for by law, or entering leased property to make necessary repairs as provided by law.